No. 10-35215

IN THE

# UNITED STATES COURT OF APPEALS

### FOR THE NINTH CIRCUIT

_____

MICHAEL EVANS,
*Plaintiff-Appellant*,

vs.

MULTNOMAH COUNTY, *et al.*,
*Defendants-Appellees*.

_____

ON APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON, PORTLAND
HONORABLE ANNA J. BROWN
U.S.D.C. No. 3:07-CV-01532-BR

_____

# REPLY BRIEF
# OF APPELLANT MICHAEL EVANS

_____

John W. Erickson, Jr., Esq.
125 Brigham Court
Colorado Springs, CO 80906
(907) 841-1139

*Pro Bono Attorney for Plaintiff-Appellant*
MICHAEL EVANS

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS .................................................................... ii

TABLE OF AUTHORITIES .............................................................. iv

I.   INTRODUCTION ...................................................................... 1

II.  ARGUMENT ............................................................................ 4

A.   The District Court's grant of partial summary judgment was inappropriate because a disputed material fact existed as to whether Sergeant Gorton's taser was loaded ...................... 4

    1.   The Summary Judgment Record before the District Court shows that it was disputed as to whether the taser used by Sergeant Gorton was loaded with a probe cartridge .................... 5

    2.   Sergeant Gorton committed battery by shining the "aiming laser" of a loaded TASER X26 into Appellant's eye(s) from a few inches away ........................................ 7

B.   Partial summary judgment was inappropriate because a disputed material fact existed as to Appellant's state law claim of malicious prosecution against Deputy Hathaway ........................ 10

C.   The District Court abused its discretion when it denied Appellant's Motion for Mistrial ................................ 12

D.   The District Court abused its discretion when it sustained Appellees' objection to Appellant's proposed use of a rebuttal witness ............................................................ 14

E.   The District Court abused its discretion when it failed to amend the final draft of the verdict form at Appellant's request ............ 17

IX.  CONCLUSION ........................................................................ 19

/ / /

/ / /

CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION TYPEFACE REQUIREMENTS, AND TYPE STYLE
REQUIREMENTS 20

CERTIFICATE OF SERVICE 21

# TABLE OF AUTHORITIES

## Federal Cases

Page

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................ 7, 10, 12

*United States v. Antonakeas*, 255 F.3d 714 (9th Cir. 2001) ........................ 17

*United States v. Reed*, 147 F.3d 1178 (9th Cir. 1988) ........................ 18

## State Cases

*Adams v. Commonwealth*, 534 S.E.2d 347 (Va. Ct. App. 2000) ........................ 9, 12

*Bakker v. Baza'r, Inc.*, 551 P.2d 1269 (Or. 1976) ........................ 8

*Ballard v. City of Albany*, 191 P.3d 679 (Or. Ct. App. 2008) ........................ 8

*Broussard v. Union Pacific Railroad Co.*, 700 So.2d 542

    (La. Ct. App. 1997) ........................ 9

*Friedrich v. Adesman*, 934 P.2d 587 (Or. Ct. App. 1997) ........................ 8

*Lacey v. Laird*, 139 N.E.2d 25 (Ohio 1956) ........................ 9

*Leichtman v. WLW Jacor Communications, Inc.*, 634 N.E.2d 697

    (Ohio Ct. App. 1994) ........................ 8, 9

*Perry v. Rein*, 168 P.3d 1163 (Or. Ct. App. 2007) ........................ 11

*Stam v. Salles*, 355 P.2d 93 (Or. 1960) ........................ 16

*Story v. City of Bozeman*, 791 P.2d 767 (Mont. 1990) ........................ 18

*Wagner v. Kaiser Foundation Hospitals*, 589 P.2d 1106 (Or. 1979) ........................ 16

/ / /

## State Statutes

Or. Rev. Stat. § 312.710(a) .................................................................. 11

Or. Rev. Stat. § 30.650 ....................................................................... 11

Or. Rev. Stat. §§ 30.260 - 30.300 ........................................................ 5

## Federal Rules of Civil Procedure

Fed. R. Civ. P. 56(c) ..................................................................... 7, 10, 12

## Oregon Rules of Civil Procedure

Or. R. Civ. P. 58 ............................................................................ 15

## I.    INTRODUCTION

To begin, and out of an abundance of caution, Appellant reiterates each of the arguments made in his Opening Brief, filed before this Court on September 16, 2011. That any and/or all argument(s) previously argued are not repeated and/or contained herein does *not* constitute a waiver and/or abandonment of said argument(s) on behalf of Appellant Michael Evans. To the extent that Appellant's earlier arguments are repeated herein, they are repeated for the sole purpose of countering the arguments presented in Appellees' Joint Answering Brief.

Appellant argues that partial summary judgment was inappropriate because a disputed material fact existed as to whether Sergeant Gorton's taser was actually loaded; arguably, the material fact upon which the District Court based its *pretrial* decision. Appellees' argument to the contrary mistakenly rests on a presumption of law rather than the proffered evidence (*i.e.*, a video recording of the underlying incident), which was properly preserved and presented to the District Court for review and/or analysis. (ER 078). What's more, the District Court's failure to adequately address whether Sergeant Gorton's use of the *laser* constituted a battery as a matter of law warrants reversal.

Appellant next argues that partial summary judgment was inappropriate because a disputed material fact existed as to his malicious prosecution charge against Deputy Hathaway. More particularly, Appellant argues that the District

1

Court erred in concluding, as a matter of law, that he did not suffer any "economic damages" as a direct result of Deputy Hathaway's uncontested malicious prosecution charge. In response, Appellees do *not* argue that Appellant did not suffer the approximately $150,000 in "economic damages" that he claims. Instead, Appellees argue only that Appellant's alleged "economic damages" (*i.e.*, approximately $150,000) constitute information that should be stricken inasmuch as it is outside the record. Appellees' Joint Answering Brief at 19.

Appellant then argues that the District Court abused its discretion when it denied his Motion for Mistrial, given the inappropriateness of an adverse witness' testimony; especially, given the fact that Appellees' lay witness clearly violated the District Court's limiting instruction. Appellees counter and argue that:

> The District Court properly denied Plaintiff's motion for a mistrial, because Plaintiff allowed extensive questions of the defendant's expert regarding the objective reasonableness of the use of the Taser before making his objection, and the District Court's curative instruction to the jury was sufficient to cure any potential prejudice.

Appellees' Joint Answering Brief at 9. Appellees' argument fails, however, because: (1) trial counsel for Appellant objected to Defense Counsel's line of questioning in a timely manner; (2) the answers previously provided by Appellant's expert were *all* in context of what could have been done *before* Appellant was beat into near unconsciousness (*i.e.*, not after); and (3) trial counsel

for Appellant was likely under the impression that he could not object to the Court's "curative instruction."

Appellant also argues that the District Court abused its discretion when it sustained Appellees' objection to his proposed use of a rebuttal witness. To this end, Appellees argue only that the questions asked of the rebuttal witness were adequately covered in Appellant's case in chief, and were cumulative. Appellees' Joint Answering Brief at 9. Appellees are mistaken on both accounts.

Appellant correctly sought to show through rebuttal testimony that Sergeant Van Houte amended his testimony to assert an affirmative defense, based on the perjured testimony of Deputy Hathaway, by pointing out the discrepancies between the *time* Deputy Hathaway claimed he was struck at trial and Deputy Griffith's statement in this deposition that he heard Deputy Hathaway claim that he was struck prior to Deputy Griffith striking Appellant. In addition, Appellees neither proffer any evidence to support their notion and/or allegation that the proposed cross-examination of Sergeant Van Houte would have provided the information trial counsel for Appellant sought to elicit from Deputy Griffith by way of rebuttal evidence; nor, do they establish how the evidence sought by way of rebuttal was cumulative.

Finally, Appellant argues that the trial court abused its discretion when it failed to amend the final draft of the verdict form at his request. Appellees counter

and argue that Appellant "did not identify for the District Court, nor does he cite in his Opening Brief, any authority for the proposition that failing to aggregate all damages against all defendants into a single line on the verdict form is an abuse of a trial court's discretion." Appellees' Joint Answering Brief at 9. Appellees also argue that Appellant "failed to object to the verdict form before it was submitted to the jury and therefore waived any objection to the form of the verdict upon appeal." Appellees' Joint Answering Brief at 9-10. Again, Appellees are mistaken.

Appellant argued and made clear to the District Court that excessive force and battery were separate legal theories for the exact same harm; and, that they should not be separated. (ER 287-88). Citing persuasive authority on appeal, Appellant further argued that the District Court's failure to amend the final draft of the verdict form at Appellant's request constituted an abuse of discretion. Appellees' argument fails to contradict the same.

## II. ARGUMENT

### A. The District Court's grant of partial summary judgment was inappropriate because a disputed material fact existed as to whether Sergeant Gorton's taser was loaded.

Appellant brought his Second Claim against Appellee Multnomah County, based upon the actions of Sergeant Gorton, when she allegedly committed assault

4

and battery against Appellant by threatening to tase him.[1] (ER 206). Both parties

moved for summary judgment on this claim. (ER 206).

> **1.      The Summary Judgment Record before the District Court
> shows that it was disputed as to whether the taser used by
> Sergeant Gorton was loaded with a probe cartridge.**

Appellees initially argue that the District Court correctly concluded

"Sergeant Gorton was aware that the Taser was not equipped with a cartridge, and

thus she could not have had the requisite intent necessary to support a claim for

battery." Appellees' Joint Answering Brief at 10 (*citing* ER 207). Appellees and

the District Court are mistaken.

In its analysis, the District Court noted:

> Sgt. Gorton was aware the taser was not equipped with a cartridge at
> the time she pointed the taser light at [Appellant] and, therefore, she
> knew she was unable to tase [Appellant]. Thus, the undisputed facts
> demonstrate Sgt. Gorton did not intend any harmful or offensive
> contact resulting from her threat to use the taser.

(ER 207). However, and despite Appellees' argument to the contrary, whether or

not the taser was equipped with a cartridge, *i.e.*, "loaded," when Sergeant Gorton

---

[1]      Although Appellant brought this claim against Sergeant Gorton in his
Complaint, Appellant conceded that he could only bring this claim against
Multnomah County pursuant to the Oregon Tort Claims Act (OTCA), *i.e.*, Or. Rev.
Stat. §§ 30.260-30.300. (ER 206). The parties, therefore, agreed to interpret
Appellant's Second Claim as proceeding against Multnomah County and to treat
the parties' respective Motions for Partial Summary Judgment as brought by and
against Multnomah County. (ER 206).

aimed it directly at Appellant's eye(s), is a contested fact, which remains in dispute.

In response to questions asked during her deposition, Sergeant Gorton informed that the taser was "charged and ready to use," *and that she couldn't remember, when she took it out of the container*, "if it had the cartridge on it or not." (ER 020-021). However, close examination of the surveillance video reveals that the taser was in fact "loaded" at the time of the incident.[2] (ER 078). This

---

[2]    According to Appellant, the District Court "did not consider the actual video evidence . . . in the light most favorable to [Appellant] showing the [t]aser [c]artridge was in fact attached at the time it was pointed at [Appellant's] face." (ER 335). In addition, Appellant argues the District Court "lacked sufficient knowledge of tasers to make such a determination and recognize what a taser looks like with the [t]aser [c]artridge removed v. [c]artridge installed." (ER 336). Appellant notes also that the "[t]rial testimony showed that [Appellant] sold two models of [tasers] in his retail store, the X-26 and a model made in Russia." (ER 336). Appellant further contends that he "is very familiar with the model of [t]aser used on him which made his [imminent] fear of potential use of deadly force ([t]aser to the face) more scary [sic] than to someone who may not know what they can do." (ER 336).

> [Appellant] is aware that when the [c]artridge release tab [(*see* ER 345)] is depressed to remove the [t]aser [c]artridge, the cartridge release tab comes off as part of the [t]aser [c]artridge, this leaves the [c]artridge end of the [t]aser with a [horseshoe] appearance with two metal prongs sticking out of the ends of each side of the [horseshoe] for drive stun use.

(ER 336). To this end, close examination of the video clearly shows that the taser, deployed by Sgt. Gorton, and "pointing at point blank range in [Appellant's] face in fact has a '[b]lunt' end, not a [horseshoe] end[,] with two metal prongs exposed

evidence flies directly in the face of Appellees' argument (*i.e.*, that "Plaintiff wholly failed to contradict or present *any* evidence to overcome the presumption that the usual practice at MCDC regarding the application of Taser cartridges was followed . . . ." Appellees' Joint Answering Brief at 12 (emphasis added)).

As previously argued, and because the District Court based its decision on a disputed fact, *i.e.*, whether or not the taser was "loaded," the District Court's *pretrial* dismissal of the battery claim against Sergeant Gorton, on Defendants' Partial Motion for Summary Judgment, was improper and should be reversed.[3] Indeed, it is Appellees' arguments to the contrary, in light of the evidence provided, that are unavailing.

> ### 2. Sergeant Gorton committed battery by shining the "aiming laser" of a loaded TASER X26 into Appellant's eye(s) from a few inches away.

The District Court briefly considered whether the inappropriate use of an "aiming laser" could ever amount to a battery. (ER 148-49). Because the issue appears to have been "glossed over" by the District Court, Appellant again repeats the following out of an abundance of caution.

---

in drive stun mode." (ER 336). Consequently, *the taser in question was in fact loaded*. (ER 336).

[3] "Summary judgment is [only] appropriate where no genuine issue of material fact exists and a party is entitled to prevail in the case as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also* Fed. R. Civ. P. 56(c).

Appellant claimed that Sergeant Gorton committed a battery by shining the "aiming laser" of a loaded TASER X26 into his eye(s) from a few inches away while his head was pinned to the floor by other officers. (ER 041 & 345). Oregon courts have defined "battery" as an intentional tort that "is a 'voluntary act that is intended to cause the resulting harmful or offensive contact.'"[4] "Oregon law [also] provides that a battery occurs even where there is not direct physical contact between the defendant and the plaintiff."[5] (ER 41). "Further, it is not necessary that the contact do physical harm. The contact is a battery if it is [merely] offensive or insulting."[6] (ER 41).

Other courts have found that a battery can consist of intentionally subjecting a person to offensive physical contact in the form of: (1) offensive smells, secondary smoke (In *Leichtman v. WLW Jacor Communications, Inc.*, 634 N.E.2d 697, 699 (Ohio App. Ct. 1994), "the court held that allegations that the defendant intentionally blew cigar smoke in the plaintiff's face 'for the purpose of causing physical discomfort, humiliation, and distress' were sufficient to state a cause of

---

[4]      *Ballard v. City of Albany*, 191 P.3d 679, 686-87 (Or. Ct. App. 2008) (*quoting Walthers v. Gossett*, 941 P.2d 575, 587 (Or. Ct. App. 1997)).

[5]      *Friedrich v. Adesman*, 934 P.2d 587, 590-91 (Or. Ct. App. 1997) (battery by throwing ice in plaintiff's path which caused her to slip).

[6]      *Bakker v. Baza'r, Inc.*, 551 P.2d 1269, 1271 (Or. 1976) (examining the contents of plaintiff's shopping bag, and brushing against plaintiff in the process was a battery).

action for battery."[7] ); (2) extremely loud noise (*see e.g.*, *Broussard v. Union Pacific Railroad Co.*, 700 So.2d 542, 549 (La. Ct. App. 1997), *writ denied*, 704 So.2d 1202 (La.1997), where a $50,000 award for hearing loss caused by loud noises over a long period of time was given); or (3) a laser beam to the eye(s).

In *Adams v. Commonwealth*, 534 S.E.2d 347, 351 (2000), the Virginia Court of Appeals held that a criminal defendant was properly found guilty of battery when he shined a laser into a police officer's eyes. As a consequence, it only follows that, if a criminal defendant can be found guilty of battery for shining a laser into a police officer's eyes, then a police officer can be found liable of battery for inappropriately and/or unnecessarily shining a laser into the eye(s) of an accused; in this case, Appellant. Appellees misrepresent Appellant's arguments with respect to the same.

The District Court found, "as a matter of law, that [Sergeant] Gorton's threat to use *the taser* was not a battery under Oregon law." (ER 207 (emphasis added)). The District Court did not determine, however, whether Sergeant Gorton's use of the laser, in conjunction with or without the taser, was a battery under Oregon law.

---

[7] No matter how trivial the incident, a battery is actionable, even if damages are only one dollar. *Lacey v. Laird*, 139 N.E.2d 25, 31 (Ohio 1956). "The rationale is explained by Roscoe Pound in his essay "Liability": "[I]n civilized society men must be able to assume that others will do them no intentional injury-that others will commit no intentioned aggressions upon them." *Leichtman*, 634 N.E.2d at 699.

It is clear that Sergeant Gorton intended to gain Appellant's compliance by aiming a laser into his eye, which she admits she did. (ER 023). Thus, it was Sergeant Gorton's intended use of the laser, and not necessarily the taser, that constitutes the battery. To be sure, the act of shining the laser into Appellant's eye(s) was done with the intent "to cause the resulting harmful or offensive contact," Appellees' Joint Answering Brief at 18 (citation omitted), *i.e.*, Sergeant Gorton intended to make the unwanted contact to Appellant's eye(s), with the laser, which she did. The aforementioned cases support this argument; and, Appellees do not argue otherwise.

Based upon the aforesaid, the District Court's dismissal of Appellant's battery claim, with respect to Sergeant Gorton's use of the aiming laser, was improper and should be reversed.[8]

**B.** **Partial summary judgment was inappropriate because a disputed material fact existed as to Appellant's state law claim of malicious prosecution against Deputy Hathaway.**

The District Court concluded, as a matter of law, that Appellant did not suffer any "economic damages" as a result of the alleged malicious prosecution.

---

[8] *Supra* Note 3. Upon reversal and/or remand, the trier of fact should first determine whether the taser was "loaded." If yes, then the trier of fact should determine whether Sergeant Gorton's use of the taser was unreasonable. If yes, then Sergeant Gorton is liable for battery. To be sure, the pointing of an aiming laser of taser into the eye(s) of an unwilling and/or non-consenting individual constitutes battery. *Adams*, 534 S.E.2d at 351.

(ER 219). Thus, pursuant to Or. Rev. Stat. § 30.650 and *Perry v. Rein*, 168 P.3d 1163, 1170-71 (Or. Ct. App. 2007), the District Court found that Appellant "was not able to establish one of the necessary elements for a malicious-prosecution claim under state law." (ER 219). Appellant respectfully disagrees.

As a direct result of Deputy Richard Hathaway's malicious prosecution charge, *which caused Appellant's bail to be raised above an amount he could afford*, over $150,000 in retail merchandise was stolen from Appellant's property.[9] (ER 334-35). Because Appellant's loss of approximately $150,000 in private property was a direct result of Deputy Hathaway's malicious charge, Appellant suffered "economic damages" as defined by Or. Rev. Stat. § 312.710 (a). Pursuant to Or. Rev. Stat. § 30.650 and *Perry*, 168 P.3d at 1170-72; therefore, each of the requisite elements necessary to prosecute a malicious-prosecution claim under Oregon State Law has been properly established.

Because the District Court incorrectly concluded that Appellant suffered no "economic damages," despite the fact that he suffered an approximately $150,000 property loss, due solely to the malicious prosecution charge, the District Court's

---

[9]     There was substantial property belonging to Appellant at his residence, which consisted of retail goods from his import business and his personal property, *e.g.*, several hand forged swords, suits of armor, electric guitars, SCUBA gear, and computer equipment and software all totaling approximately $150,000. (ER 334-35).

dismissal of Appellant's state law claim of malicious prosecution against Deputy

Hathaway was improper and should be reversed.[10]

### C. The District Court abused its discretion when it denied Appellant's Motion for Mistrial.

Appellees contend "the District Court did not abuse its discretion in

determining that Plaintiff 'let a whole line of . . . inquiry come in without

objection.'" Appellees' Joint Answering Brief at 24 (*citing* ER 310). In an effort to

bolster their argument, Appellees utilize an entire page of their answering brief to

recite -- verbatim -- six questions asked of Mr. Atherton before Appellant's trial

counsel stated: "Your Honor, I have a matter for the court. Can I approach?" (ER

307). Despite Appellees' argument to the contrary, as soon as Mr. Atherton gave

an opinion as to the reasonableness of Sergeant Gorton's use of the Taser (ER 305-

06), trial counsel for Appellant began digging through his notes to ascertain the

District Court's limiting instruction. (ER 332-33). Upon locating the District

Court's limiting instruction, he *immediately* raised an objection. (ER 307). As a

consequence, Appellant's trial Counsel, upon verifying the District Court's pretrial

---

[10]    *Supra* Note 3. Appellees argue "to the extent that the brief presents information that is outside the record, it is improper, and that portion of the brief should be stricken." Appellees' Joint Answering Brief at 19. Because Appellant's loss *is* real, and because *Pro Se* Counsel for Appellant continues to search for an explanation re the absence of Appellant's economic loss from the record, the argument is continued herein largely in an effort to preserve the same.

ruling, did in fact make a timely motion.[11] (ER 307). What's more, as was previously argued, it was Defense Counsel's error that caused the issue to be raised. Indeed, Defense Counsel also knew that the line of questioning was impermissible, but proceeded anyway. (ER 305-06).

Appellees next contend that the District Court did not "abuse its discretion in determining that there was no prejudice warranting a mistrial." Appellees' Joint Answering Brief at 25. However, despite its statement on the record re the absence of prejudice (*i.e.*, "I don't see that there's been any prejudice here . . . . (ER 310)) the District Court *did* provide a curative instruction re Mr. Atherton's testimony. As a consequence, the District Court found, albeit implicitly, that there *was* prejudice; indeed, enough to warrant the curative instruction.

Appellees next argue that the District Court's curative instruction settles the matter because trial counsel for Appellant neither: (1) made an argument re the timing of the instruction; nor (2) argued that the language of the curative instruction was inadequate. Appellees' Joint Answering Brief at 27. However, due to no fault of his own, trial counsel for Appellant was clearly under the impression that he was prohibited from making any and/or all objections with respect to the

---

[11]     Appellees further contend that Plaintiff did not object until after the *last* question relating to the subject of Tasers was asked and answered. However, there is nothing in the record to suggest that Defense Counsel's sixth question was the *last* question relative to the subject. As a consequence, the Court should reject Appellees' self-serving statement with respect to the same.

curative instruction proffered. Indeed, after being scolded by the District Court, more than once, for his failure to stand when addressing the Court (ER 310), the District Court informed trial counsel for Appellant: "I will tell the jury to disregard this witness's testimony about the Taser because of the state of the record after the Motion in Limine, *and we're not going to comment on it any further*. (ER 311(emphasis added)). Thus, in an effort to avoid possible sanctions, trial counsel for Appellant likely heeded the District Court's warning; and, refrained from addressing the issue any further. (ER 311). Appellant should not be punished based upon the District Court's limitations and/or restrictions, which were unnecessarily placed upon his trial counsel.

Because: (1) counsel for Appellant objected to Defense Counsel's line of questioning in a timely manner; (2) the answers provided by Appellant's expert were all in context of what could have been done *before* Appellant was beat into near unconsciousness (*i.e.*, not after); and (3) trial counsel for Appellant was likely under the impression that he could not object to the Court's curative instruction, the District Court abused its discretion when it: (1) denied Appellant's motion for mistrial; or (2) in the alternative, implicitly prohibited counsel for Appellant from making objections to the curative instruction offered.

/ / /

/ / /

14

**D.  The District Court abused its discretion when it sustained Appellees' objection to Appellant's proposed use of a rebuttal witness.**

Appellees contend, "[a]s a threshold matter, it must be noted that this argument is wholly distinct from the one advanced at trial by Plaintiff in explaining why he was eliciting the same testimony that had already been presented during his case in chief." Appellees' Joint Answering Brief at 28. Appellant disagrees.

At trial, counsel for Appellant stated: "Your Honor, this is rebuttal to Deputy Hathaway's testimony about the *timing of the sequence of events*." (ER 324 (emphasis added)).  To be sure, counsel for Appellant called Sergeant Griffith to the stand to illicit his depositional statement that he heard Deputy Hathaway claim that Appellant struck him at a point in the surveillance video that clearly shows that he was in fact not hit; despite Appellant's elbow coming very close to but missing his nose (ER 338-39); *a timing issue*.

Appellant had no way to anticipate that Sergeant Van Houte's trial testimony would be so different from his written report. (ER 339). As a consequence, there was no way for Appellant to rebut him during his case in chief. (ER 339).

As previously argued, and pursuant to Or. R. Civ. P. 58, it was within the District Court's discretion to allow testimony in rebuttal, if the testimony becomes

15

relevant in rebuttal, even though the testimony might have been used in a party's case in chief.[12]

In this particular case, Appellant sought to show through rebuttal testimony that Sergeant Van Houte amended his testimony to assert an affirmative defense, based on the perjured testimony of Deputy Hathaway, by pointing out the discrepancies between the *time* Deputy Hathaway claimed he was struck at trial and Deputy Griffith's statement in this deposition that he heard Deputy Hathaway claim that he was struck prior to Deputy Griffith striking Appellant, which he used to justify his assault on brutality to Appellant. (ER 323& 339-40). This occurred *before the time* Deputy Hathaway claimed, at trial, that he was hit; but, *after the time* Deputy Hathaway claimed, at his deposition, that he was hit. It is also *the only time* Appellant's elbow is actually seen coming anywhere close to Deputy Hathaway's nose in the video. (ER 78). As a consequence, and because the rebuttal evidence would have likely established that Sergeant Van Houte's "change" in opinion was based on perjured testimony, the Court should find that the District

---

[12]     *Wagner v. Kaiser Foundation Hospitals*, 589 P.2d 1106, 1110 (Or. 1979). *See also Stam v. Salles*, 355 P.2d 93, 93-94 (Or. 1960) (wherein the court held that the trial court, in effect, had permitted the plaintiff to reopen its case. Although the evidence may not have been proper rebuttal. The ruling was properly within the court's discretion.).

Court abused its discretion when it sustained Appellees' objection to Appellant's proposed use of a rebuttal witness.[13]

Appellees then argue that, "even if the Court erred in upholding the objection to the proffered rebuttal testimony, the error was harmless, because Plaintiff was allowed to cross-examine Sgt. Van Houte regarding the discrepancy between his trial testimony and his expert witness report." Appellees' Joint Answering Brief at 30 (*citing* ER 316-320). Again, Appellant disagrees.

Appellees proffer no evidence to support their notion and/or allegation that the proposed cross-examination of Sergeant Van Houte would have provided the information counsel for Appellant sought to elicit from Deputy Griffith by way of rebuttal evidence. As a consequence, the District Court's error was far from harmless. Indeed, Appellant continues to assert that he suffered undue prejudice as a direct result; whereby, this Court should overturn the District Court's ruling re the same.

### E. The District Court abused its discretion when it failed to amend the final draft of the verdict form at Appellant's request.

It is undisputed that the District Court required the jury to set an amount for the damages caused by the officer's excessive force, in violation of the Fourth

---

[13] The Court of Appeals reviews for an abuse of discretion the District Court's denial of rebuttal evidence. *United States v. Antonakeas*, 255 F.3d 714, 724 (9th Cir. 2001).

Amendment. On a separate line, the District Court required the jury to set an amount for the damages caused by the battery. In response, Appellant made clear to the District Court that excessive force and battery were separate legal theories for the exact same harm; and, that they should not be separated. (ER 287-88).

Notwithstanding Appellant's argument, the final draft of the verdict form was not altered at Appellant's request. As a result, Appellant contends the jury was forced to grapple with the arguably absurd and unnecessary task of trying to decide how much of Appellant's damages should be attributed to excessive force and how much of Appellant's damages should be attributed to assault and battery. More specifically, the jury was forced to decide how much of Appellant's injuries to attribute to the state law claims of assault and battery and how much to attribute to the Fourth Amendment violations. To be sure, the verdict form was unnecessarily confusing. As a consequence, the District Court's failure to amend the final draft of the verdict form at Appellant's request constitutes an abuse of discretion.[14]

/ / /

/ / /

/ / /

---

[14]     See *United States v. Reed*, 147 F.3d 1178, 1180 (9th Cir. 1988). *See also Story v. City of Bozeman*, 791 P.2d 767, 772 (Mont. 1990) (where the court found that the district court erred in refusing defendants' motion for a new trial because of inadequacy of the special verdict form, which was internally inconsistent, confusing, and misleading to the jury).

## IX.  CONCLUSION

Based on the foregoing, it is again respectfully requested that this Honorable Court reverse the Final Judgment of the District Court as to those findings and conclusions appealed both herein by Appellant in his Opening Brief, and remand the case, if necessary, to the District Court for further proceedings.


Dated: November 21, 2011

/s/John W. Erickson, Jr.
John W. Erickson, Jr., Esq.
125 Brigham Court
Colorado Springs, CO 80906
907-841-1139
*Pro Bono* Attorney for Appellant
MICHAEL EVANS

### <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS</u>

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    <u>X</u>   this brief contains <u>5,259</u> words, including the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    <u>X</u>   this brief has been prepared in a proportionally spaced typeface using Microsoft 2007 with font size of 14 and font style of Time New Roman.

Dated: November 21, 2011                    /s/John W. Erickson, Jr.
                                            John W. Erickson, Jr., Esq.
                                            125 Brigham Court
                                            Colorado Springs, CO 80906
                                            907-841-1139
                                            *Pro Bono* Attorney for Appellant
                                            MICHAEL EVANS

20

## **<u>CERTIFICATE OF SERVICE</u>**

Ninth Circuit Case Number: 10-35215

I hereby certify that I electronically filed the foregoing with the Clerk of

Court of the Court for the United States Court of Appeals for the Ninth Circuit by

using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and

that service will be accomplished by the appellate CM/ECF system.

Dated: November 21, 2011                    /s/John W. Erickson, Jr._____

John W. Erickson, Jr., Esq.
125 Brigham Court
Colorado Springs, CO 80906
907-841-1139
*Pro Bono* Attorney for Appellant
MICHAEL EVANS